5-12-371 People vs. Crutchfield. Council, ready? Your Honors, Council, may it please the Court. My name is John McCarthy, and I'm from the Fourth District Office of the State Appellate Defender, and I represent v. Crutchfield. I will begin by concentrating on Issue 2 in brief, which asks a simple question. Has the OMA legislature ever properly enacted legislation that would add the murder of a child under 12 years of age to the natural life provision of the statutes? And the short answer is no. In 1999, the OMA Supreme Court ruled on this very issue. They said that the original enactment of that provision violated the single-subject rule, and they ruled it unconstitutional. However, in order to address the state's argument, we have to go through three amendments and two Illinois Supreme Court decisions to understand what actually has occurred here. The first amendment is the original amendment that was ruled unconstitutional by the Illinois Supreme Court that added the murder of a child under 12 to the discretionary natural life provisions. And that took effect on July 1, 1995. Less than five months later, the legislature decided that instead of discretionary life, these categories of offenders should be mandatory life provisions. And so they added, they changed discretionary to mandatory. Now, within two months of that decision, a Cook County judge ruled that provision unconstitutional as violating the single-subject rule. Was it that provision? It wasn't the first statute? It was the second provision. It was the second statute that was passed that made it mandatory. Yes. Okay. I just want to make sure. And the Illinois legislature didn't want to wait to see what the Illinois Supreme Court had to say because they wanted to fix the problem. So we have Amendment 3, which took effect on May 29, 1996, and it specifically only amended the discretionary life to mandatory life. So then we get the Illinois Supreme Court decision on what the Cook County judge did. And that's in Johnston v. Edgar. And that occurs in 1997. The Illinois Supreme Court agreed with the Cook County judge's opinion. However, it recognized security legislation in that case. And so they held that the mandatory natural life for all these offenses was unconstitutional from the date of its inception, December 13, 1995, to the date of the amendment, May 29, 1996. Anything after that was fine. Then in 1999, we finally get the Illinois Supreme Court to weigh in on the original amendment, which added murder of children under 12 to the list of offenses that qualified. And Woodward said, unequivocally, that statute was enacted in violation of single-subject rule and ruled it unconstitutional. Now, Woodward's is important just as much for what it did not do as what it did. It did not do what they did in Johnston v. Edgar. In Johnston v. Edgar, they said there was a reconstitution of that switch from discretionary to mandatory. Woodward's did not say there was that distinction. They said it's unconstitutional today. And since then, the Illinois legislature has never recanted that provision of the statute. There was one attempt in 2003 called House Bill 73, and its stated purpose was to correct the problem of the original amendment and add child murders to the mandatory natural life. That bill went to rules committee in March. It was never voted on, and it died that session. And to my knowledge, at least through 2006 when this crime occurred, there was never, ever another attempt to reenact it. Therefore, the ruling in Woodward's commands that this statute has never been recanted. There is no ifs, ands, or buts found in that. Now, if there are no questions on that issue, I have one quick point I'd like to make on the first issue in regard to the Crankville hearing. I think that part of the council's response that bothered me most had to do with the 9-1-1 tape and why he didn't play it for the jury. My client felt it was important because there was an issue as did Starr Loman attempt to do CPR, and could that have caused damage to the boy's stomach? Now, I understand normally the decision whether or not to play a tape, introduce evidence, call a witness, trial strategy. You really can't go in without an assistant's counsel. But the reason my client says that tape wasn't introduced is my lawyer told me he lost it. He couldn't find it. And what bothered me about that issue is the lawyer just didn't say, no, I had the tape. I decided not to play it. It wasn't going to help, or whatever his reason was. His response was, I don't recall telling him that. And what bothers me is those are the same kinds of answers that Starr Loman was given to him on his cross-examination of her that led him to believe he made her look so bad that he didn't have to perfect any impeachment. And so it's that little surge of applause that just sticks with me, and I don't know why. I think this warrants a remand for a new counsel to be appointed to look into it. I just don't like the answer that I don't recall if I told him I lost it or not. If there are no questions, thank you, counsel. Your Honors, counsel, people would like to explain why Wooders was correctly decided. I'm sorry? People would like to explain exactly why Wooders was correctly decided and why also this court would do no violence to Wooders or disregard a holding of Wooders if this court affirms the defendant's natural life sentence. To do that, it gets a little tedious, but there is a chronology that is important for this court to look at. In 1995, effective July 21st, 1995, the legislature passed Public Act 89-203, which gave the court discretion to impose a natural life sentence upon an adult who murdered a child under 12. In 1995, they passed Public Act 89-428, effective December 13th, 1995, and the change was that the court was denied discretion in this circumstance and it became a mandatory natural license. So there was a change of intent there. On April 12th, 1996, Jessica Wooders, as charged and convicted, killed her son. In 1996, Public Act 89-462, effective after the date that Jessica Wooders killed her son, the Illinois legislature passed Public Act 89-462, effective 5-29-96. And they did so in part to take care of what they recognized as a single-subject rule violation. They recognized Judge Yaffe in Cook County had found that unconstitutional. They did this preemptively in order to enact this. And the thing that they enacted was somewhat different than Public Act 89-428. It was entitled the Child Sex Offender and Murderer Community Notification Law. Okay. That was 1996. That was after the date that Jessica Wooders killed her son. In 1997, Johnson v. Edgar found that Public Act 89-428 violated the single-subject rule and was unconstitutional. But within the opinion, the Illinois Supreme Court recognized that Public Act 89-462 recodified Article 2. The section that contains the mandatory naturalized sentence is Article 2, Section 280. And as Johnson v. Edgar recognized, this recodified that section. In 1999, Wooders, People v. Jessica Wooders, which originated in this court, was before the Illinois Supreme Court. And the Illinois Supreme Court found that the discretionary statute 89-203 violated the single-subject rule and was unconstitutional. Now, since then, I mean, at the time of Wooders and around that time and after, courts struggled with what does void ab initio mean? Does that mean that it never existed? It's like the Coveto Court and Edwards have found, well, void ab initio means that it is void. I mean, it is as if it never existed, as if it was never enacted. But later on, in Hilaire, the Illinois Supreme Court explained what it meant by void ab initio. And it explained that the court has no authority to take a statute off the books. And when a court finds or when the Illinois Supreme Court finds that a statute is void ab initio or unconstitutional, it doesn't have the authority to take that statute off the books. It still exists on the books. It's still part of the statute. It just is not enforceable. Now, and then also in Ocasek in 2008, the Illinois Supreme Court explained what a court, what the legislature has to do when a statute has been found unconstitutional or violative of the single-subject rule. And it can't just reiterate it as it did in Ocasek accidentally. There has to be some action of amendment that brings the, that changes the statute so that it is revitalized or revived. And in this case, that's exactly what happened. Although, the time gets a little complex because we've got, we have cases decided in 1999 that are retroactive to 1995. And cases that are decided in 1997 that are retroactive to 1995. Try to put that aside and understand the chronology of it. In 89-203, in 95, the legislature created a discretionary statute that permits the court to impose a natural life sentence on a child murderer. And in 1995, before Jessica Wooders killed her son, it enacted 89-428. And in that statute, there was a change of legislative intent. The point is that before that, it was discretionary. And after 428, the legislature recodified it in the sense that, let's see, the, originally in the discretionary statute, the only part that made it mandatory applied to EMTs and law enforcement. And that was contained in subparagraph CA1CB. That was discretionary. When the court, when the legislature reenacted, and let's just skip over 428 and jump to 462 because 428 is invalid. We'll jump to see what the legislature did in Public Act 89-462, which was effective after Jessica Wooders murdered her child. So therefore, could not have been applied to Jessica Wooders, which is why Jessica Wooders is still good law. In 49, in 89-462, the legislature moved the language, making it mandatory, up from A1CB to, up to paragraph C. And that, now it read in paragraph C, the court, and this is added by Keritz, the court shall sentence the defendant to a term of natural life imprisonment when the death penalty is not imposed, if, and then that amendment of C acted on all of the I, little I, through the I that was added. So in that sense, the court, the legislature in 1996, advanced an intent to change the law, to change it to the point where courts no longer had discretion, but it became mandatory. And that's a change of intent. And the amendment that they enacted was at the beginning of paragraph C, and it affected all of 1 and 2 through the I. They removed the section from the, and moved it up to control all of the subsections under paragraph C. And in so doing, they did an amendment that revived the natural life sentence. And that is one of the ways in which the legislature may reenact or revive a public act that's found violent in the city court. Are there any questions? Thank you, counsel. Mr. Baum. This isn't complicated at all. It's fully very straightforward. Reiteration is not recodification. They can pass this law, amend this law a thousand times, and until they cure the defect of adding child murders with children under 12, until they correct that, it's not enforced. Is repositioning recodification? Excuse me? Is repositioning an amendment? No. Why not? Because- It affects certain provisions after that new positioning. Why doesn't that constitute an amendment? According to the reading, curative legislation must exhibit on its face evidence that is intended to cure or allocate defective legislation. The defective legislation in this case is the original amendment which added murders of children under 12 years of age to the statute. They have never, on the face of the statute, cured that problem. All they've done is come from discretionary life to mandatory life. And until they do some- And we know the legislature knows they haven't fixed it, because they tried to fix it in 2003 and weren't able to do it, because they couldn't get through the polls. There's a reason why I think they're outside the record, but it's not germane to this court. If there are no questions, thank you.